**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No.: _____

MICHAEL SHORE, on behalf of
himself and all others similarly situated,

Plaintiff,

v.

WILMINGTON TRUST, N.A.,
as trustee for MFRA TRUST 2015-1
and FAY SERVICING, LLC,

Defendants.

_____/

## CLASS ACTION COMPLAINT

Plaintiff Michael Shore, on behalf of himself and all others similarly situated, alleges violations of the Fair Debt Collection Practices Act 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Florida Consumer Collection Practices Act § 559.55 *et seq.* ("FCCPA"), against Defendant WILMINGTON TRUST, N.A., as trustee for MFRA TRUST 2015-1 ("Wilmington"), and violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), FCCPA, and the FDCPA against Defendant FAY SERVICING, LLC ("Fay") (collectively "Defendants").

1.      Fay is a mortgage loan servicer who collects debts. In doing so, Fay charges and collects mortgage loans and fees for third party lenders, like Wilmington.  Fay, on behalf of Wilmington, charged Plaintiff $215.00 in "Pending Foreclosure Attorney Fees" necessary to reinstate his loan to avoid foreclosure. "Pending" attorneys' fees are fees that Wilmington expected to incur at some time in the future, but actually have *not* been incurred.  The Eleventh

Circuit has denounced "estimated" (aka "pending") fees associated with reinstatement of loans to be a violation of the FCCPA and FDCPA.

2.     Wilmington and Fay know that the "pending" charges are illegal amounts that cannot be collected in a borrower's loan reinstatement because each maintains records of the actual costs and fees associated with each borrower's loan. Additionally, Wilmington and Fay are sophisticated entities that know that the standard mortgage only allows them to recover fees and costs actually incurred.  Further, the reinstatement quote received by Plaintiff in this action was communicated in a form routinely used by Fay to communicate to mortgage borrowers on Wilmington's behalf.

3.     Despite numerous trade publications and an Eleventh Circuit decision forbidding lenders and loan servicers from collecting estimated fees, Wilmington and Fay continue to collect estimated amounts based on demands to their borrowers. Wilmington and Fay profit from these illegal charges because the longer a loan remains in default, the more they can charge in default-related fees that must be paid by the borrower to reinstate the loan or are added to any subsequent modification principal.

4.     By the conduct described herein, Defendants knowingly violated the FCCPA and the FDCPA, and Fay violated the RESPA, which caused Plaintiff and the putative class members' actual, concrete, and particularized injuries. Plaintiff's injuries, in particular, are detailed *infra*.

## JURISDICTION AND VENUE

5.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of the FDCPA and RESPA, federal statutes.

6.      The Court has supplemental jurisdiction over the FCCPA claims under 28 U.S.C. § 1367 because the basis of the FDCPA and RESPA federal claims involve the same conduct that forms the basis of the FCCPA claim.

7.      The Court has personal jurisdiction because Defendants do business throughout the United States, including Miami, Florida. Further, their voluntary contact with Plaintiff to charge and collect debts in Florida made it foreseeable that Defendants would be haled into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

8.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) because Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced and because Defendants' contacts with this District are sufficient to subject them to personal jurisdiction.

## PARTIES

10.      Plaintiff Michael Shore is a natural person who currently resides in Florida.

11.      Defendant Wilmington is a foreign banking association with a principal place of business in Wilmington, Delaware 19890. Wilmington provides international, corporate and institutional services, investment management, and private banking. It also owns mortgage loans throughout the United States, including Florida.

12.      Defendant Fay is a foreign limited liability company with a principal place of business at 440 South LaSalle Street, Suite 2000, Chicago, Illinois. Fay is one of the nation's leading specialty loan servicing companies for mortgage investors, like Wilmington.

## APPLICABLE LAW

**RESPA**

13.     RESPA imposes obligations on mortgage servicers to provide information to borrowers regarding their mortgage loans. 12 U.S.C. § 2605. In 2013, the Consumer Financial Protection Bureau ("CFPB") enacted new regulations implementing specific provisions under RESPA and the Dodd-Frank Act concerning mortgage loan servicers, which include certain requirements for responding to a written request for information concerning a borrower's mortgage loan. *See* CFR § 1024.36 *et seq.*; Public Law 111-203, 124 § 1376 (2010).

14.     RESPA provides a private cause of action against a mortgage servicer for violations of the provisions of § 2605. 12 U.S.C. § 2614.

15.     RESPA defines "servicer" as the "person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(3).

16.     RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

17.     Pursuant to RESPA, a servicer of a federally related mortgage loan "shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

18.     RESPA's mortgage servicing regulations require a servicer to respond to provide borrowers with required disclosures that are in writing and "clear and conspicuous." 12 CFR § 1024.32(a)(1).

19.     RESPA and its implementing regulations should be broadly construed to effectuate their remedial purpose. *Friedman v. Maspeth Federal Loan and Sav. Ass'n*, 30 F. Supp. 3d 183, 187 (E.D.N.Y. 2014) ("The Act was designed to throw the federal judiciary's protective cloak over residential-occupant owners of real property and their kin to protect against abuse by banks during loan closings and subsequent related events. The Act should be broadly applied to accomplish its prophylactic purposes by exercising federal subject matter jurisdiction.").

**FDCPA**

20.     The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

21.     The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

22.     The FDCPA also prohibits debt collectors from "unfair or unconscionable means to collect or attempt to collect any debt," including "the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f.

23.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

24.     The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).

25.     The FDCPA defines "debt collector" as "any person who uses . . . any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debt owed . . . or asserted to be owed or due another." *Id.* § 1692a(6).

26.     The FDCPA defines communication as "conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

27.     The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that] are primarily for personal, family, or household purposes." *Id.* § 1692a(5).

**FCCPA**

28.     The Florida Supreme Court liberally construes public protection statutes in favor of the public. *Samara Dev. Corp. v. Marlow*, 556 So. 2d 1097, 1100 (Fla. 1990).

29.     The FCCPA prohibits debt collectors from engaging in certain abusive practices in the collection of consumer debts. *See generally* Fla. Stat. § 559.72.

30.     The FCCPA's goal is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

31.     Specifically, the FCCPA states that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

32.     The FCCPA creates a private right of action under Fla. Stat. § 559.77.

33.     The FCCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 559.55(8).

34.     The FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debt. *Id.* § 559.72. This language includes all allegedly unlawful attempts at collecting consumer claims. *Williams v. Streeps Music Co.*, 333 So. 2d 65, 67 (Fla. Dist. Ct. App. 1976).

35.     The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 559.55(6).

## FACTUAL ALLEGATIONS

36.     On or around March 29, 2008, Plaintiff purchased a home in Fort Lauderdale, Florida through a $192,000 loan from Chase, secured by a mortgage on the property. Plaintiff made continuous payments on his mortgage, but fell behind sometime before April 30, 2015. Copies of the Plaintiff's Mortgage Agreement and Mortgage Note are enclosed as Exhibit "A" and Exhibit "B," respectively.

37.     Chase Bank, USA, N.A., assigned the mortgage to Wilmington, and Fay became the servicer of the loan while it was alleged to be in default. A copy of the Assignment of Mortgage is enclosed as Exhibit "C."

38.     On or about August 5, 2015, Phelan Hallinan Diamond & Jones, PLLC ("Phelan") filed a complaint to initiate foreclosure of the Plaintiff's home. Plaintiff hired the law firm of Christopher W. Legg, P.A. ("Legg, P.A.") to defend him in the foreclosure.

39.     On November 16, 2015, Fay sent Plaintiff a "Notice of Servicing Transfer" and "Fair Debt Collect Practices Act (FDCPA) Validation Notice" enclosed as Exhibit "D." Fay identified itself as the new servicer of Plaintiff's loan and identified Wilmington as the holder of the debt upon whose behalf Fay was seeking to collect a debt.

40.     Plaintiff, through his foreclosure attorney, sent a written request via e-mail to Phelan, to be processed through Fay, and requested information on the amount he must pay to reinstate his loan.

41.     On December 31, 2015, Fay responded, through Phelan, in a letter and advised Plaintiff that "[i]n accordance with your recent request, please find a **reinstatement figure** in the amount of **$18,883.45**, which is the amount needed to bring the above account current with **FAY SERVICING, LLC**." (emphasis added). The letter is attached as Exhibit "E."

42.     The total amount due included an amount of estimated foreclosure fees and costs not actually incurred by Defendants. One-line item was listed as "***Pending Foreclosure Attorney Fees" and stated an estimated amount due of $215.00.

43.     The "Pending" amount was based on a projected amount due if certain events relating to foreclosure occurred in the future.

44.     The letter states that "[a]s of the date of this communication, you owe the amount specified."

45.     Nowhere in the letter does Fay state it will return the estimated or projected amount if Plaintiff paid.

46.      Fay failed to provide any explanation or information concerning the difference between "Incurred" foreclosure attorney fees and "Pending" foreclosure attorney fees.

8

47.     Where a third party, like Phelan, had informed Fay that no legal services had yet been performed for estimated attorney's fees and costs, Fay knew that the costs and fees were not incurred and illegitimate.

48.     By charging estimated fees tacked on to the reinstatement amount and failing to provide clear and conspicuous information, Fay and Wilmington frustrated Plaintiff's ability to reinstate his loan. This caused Plaintiff to accrue additional interest and fees on the mortgage loan and incur additional attorney's fees and costs in further litigation in the foreclosure action.

49.     Fay and Wilmington both knew the "Pending" foreclosure attorney's fees were illegitimate because they are each subject to servicing and lending guidelines that provided notice to each of them that the collection of fees not actually incurred is illegitimate.

50.     In a similar case involving demands for "estimated" attorney's fees associated with loan reinstatement to avoid foreclosure, the Eleventh Circuit reversed the district court's grant of summary judgment on the FDCPA and FCCPA claims, opining, among other things, that the defendant had indeed falsely represented what the plaintiff owed and that no agreement expressly obligated the plaintiff to pay these "estimated" fees. *See Prescott v. Seterus*, *Inc*., No. 15-10038, 2015 WL 7769235, at *2-6 (11th Cir. Dec. 3, 2015) ("[Defendant] violated the FDCPA and FCCPA by charging [Plaintiff] estimated attorney's fees that he had not agreed to pay in the security agreement.").

51.     Before Fay sent, through Phelan, the reinstatement of loan letter at issue, media and trade publications consistently warned the industry against including estimated fees in reinstatement of loan letters, particularly those in the Eleventh Circuit where the *Prescott* case is binding precedent. *See 11th Circuit Finds Lender Violated FDCPA And Florida Law, Reverses Ruling*, Lexis Legal News (Dec. 7, 2015) ("The appeals court found that Seterus violated the

FDCPA and the FCCPA by charging Prescott estimated attorney fees and refused to affirm the District Court's decision.").

52.     Fay is a sophisticated mortgage loan servicer with compliance officers monitoring changes in the law. Wilmington is a sophisticated lender who also has compliance officers monitoring changes in the law. Yet, both Defendants ignored industry warnings and demanded payment of estimated fees and costs in violation of federal and state law.

53.     Even more troubling, Fay and Wilmington demanded that Plaintiff pay estimated fees despite operating under strict servicing guidelines to the contrary.

54.     Additionally, these demands were a direct breach of each of the following contract provisions permitting *only* recovery of actually amounts due: (1) Paragraph 9 of the Mortgage Agreement (Exhibit A) permitting recovery of "amounts *disbursed*" in protecting its interest and rights in the mortgage agreement (emphasis added); (2) Paragraph 14 of the Mortgage Agreement  prohibiting charging of estimated fees, stating "[l]ender may not charge fees that are expressly prohibited in this Security Instrument or by Applicable Law"; (3) Paragraph 22 of the Mortgage Agreement permitting the collection of "expenses *incurred* in pursuing" certain actions under the Paragraph which governed default, notice of default, actions to cure default, and reinstatement of loans (emphasis added); and (4) Paragraph 6(E) of the Mortgage Note (Exhibit B) permitting Wilmington the "right to be *paid back* . . . for all of its costs and expenses in enforcing" the note, which include "reasonable attorneys' fees." (emphasis added).

55.     Therefore, Wilmington and Fay knew that demanding payment of fees not yet incurred was not permitted because it violated the standard mortgage agreement and note that is frequently used in mortgage lending and servicing.

56. The reinstatement letter to Plaintiff contains a form reinstatement quote containing a vague explanation of the fees, costs and terms of reinstatement.

57. Fay's and Wilmington's standard business practice is to demand illegal default-related fees and costs not incurred and not owed.  By repeatedly charging illegal default-related fees in foreclosure reinstatement quotes, Fay has a pattern and practice of providing borrowers with unclear and confusing responses to their requests for information.

58. This type of conduct is not new to Fay or Wilmington, as evidenced by the hundreds of complaints received by the CFPB about Fay's servicing practices.
*See* https://data.consumerfinance.gov/dataset/Consumer-Complaints/s6ew-h6mp

59. On or about December 6, 2016, the Plaintiff, through counsel, sent a cure letter to both Defendants.   Neither Defendant responded.

60. After a reasonable amount of time, Plaintiff filed this lawsuit because Defendants failed to cure the breach of its violations of state and federal law.

## PLAINTIFF'S STATUTORY RIGHT TO RECEIVE PROPERLY DISCLOSED FEES FOR HIS MORTGAGE LOAN

61. Plaintiff has a statutory right to receive accurate and timely information from Fay in its response to Plaintiff's request for information about his mortgage loan. 12 CFR § 1024.38(a)(1)(iii). Also, Plaintiff has a statutory right to receive a clear and conspicuous disclosure from Fay about the fees and costs he is required to pay on his mortgage loan. 12 CFR § 1024.32(a)(1).

62. By failing to respond with accurate information about the amounts owed by Plaintiff on his mortgage loan, Fay deprived Plaintiff of his statutory right to accurate information under RESPA.

63.     By responding with false and confusing information, Fay did not provide a clear and conspicuous disclosure about the amount owed by Plaintiff on his mortgage loan.  In doing so, Fay deprived Plaintiff of his statutory right to clear and conspicuous disclosure under RESPA.

## ADDITIONAL FACTUAL ALLEGATIONS REGARDING PLAINTIFF'S INJURY CAUSED BY WILMINGTON'S FCCPA AND FDCPA VIOLATIONS AND FAY'S FCCPA, FDCPA, AND RESPA VIOLATIONS

64.     By charging estimated fees tacked on to the reinstatement of loan amount, and by failing to provide information in a clear and conspicuous manner, Fay frustrated Plaintiff's ability to reinstate his loan and caused him to incur further attorney's fees and costs in connection with defending the foreclosure action.

65.     After Phelan initiated foreclosure of Plaintiff's property in August 2015, Plaintiff retained Chris Legg ("Legg") of Christopher W. Legg, P.A. for representation in connection with mortgage payments purportedly owed. Plaintiff paid Legg a $500.00 retainer and agreed to pay him $325.00 per hour.

66.     During the course of this representation, Plaintiff has incurred attorney's fees directly flowing from the illegal charges demanded in Defendants' reinstatement of loan letter to him, including, *inter alia*, a consultation between Plaintiff and Legg concerning the reinstatement letter and confusion over the "estimated" amounts and ambiguous charges contained in the December 30, 2016 letter.

67.     During the course of this representation, and after Fay's reinstatement of loan letter to Plaintiff demanding the "Pending" foreclosure fees, Plaintiff had the ability to pay the actual amount due to reinstate his mortgage loan.

68.     However, Plaintiff did not pay the actual amount owed to reinstate his loan because Plaintiff reasonably believed—and the reinstatement letter indicated—that the full

12

$18,883.45 was due to reinstate his loan and that amount included "pending" fees Plaintiff did not understand, and refused to pay.

69.     Had the reinstatement of loan letter clearly demanded only the amount actual owed to reinstate his loan—and not "pending" fees not owed and ambiguously labeled—Plaintiff *could and would* have paid the actual amount owed to reinstate his loan.

70.     Because Wilmington and Fay did not demand only actual amounts owed, Plaintiff continued to pay Legg for attendant legal fees. Legg's extended representation and fees were also caused by the additional consultations required to discuss the illegal and confusing "Pending" fees in the reinstatement of loan letter.

71.     Because Wilmington and Fay did not demand only actual amounts owed, Plaintiff continued to incur interest on his mortgage loan and additional interest on the charges owed to Wilmington through Fay resulting from the delayed payment.

72.     Because Wilmington and Fay did not demand only actual amounts owed, Plaintiff had to engage in additional correspondence with Phelan and Fay and paid additional out-of-pocket costs.  Additional costs included, among others, courier costs (e.g., postage) resulting from Plaintiff mailing Phelan and Fay additional information he would not have had to send had his loan been reinstated earlier.

73.     Because Wilmington and Fay did not demand only actual amounts owed, Plaintiff experienced significant distress concerning foreclosure on his home.

74.     Plaintiff seeks to recover these additional damages he would not have incurred but for Defendants' FCCPA, FDUTPA and RESPA violations stemming from its gross "estimated" fee demands.

## CLASS ACTION ALLEGATIONS

### Florida Class 1

75.     Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of

Civil Procedure on behalf of the following class of persons aggrieved by Fay's RESPA violation

("Florida Class 1"), subject to modification after discovery and case development:

> All Florida residents to whom Fay responded to a written request for
> information that included estimated and/or unclear or inconspicuous fees,
> including but not limited to "Pending" foreclosure attorney fees, during the
> applicable statute of limitations.

### Florida Class 2

76.     Additionally, Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the

Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by

Defendants' FCCPA violations ("Florida Class 2"), subject to modification after discovery and

case development:

> All Florida residents to whom Defendants charged, collected, or attempted to
> collect estimated reinstatement of loan amounts during the applicable statute of
> limitations.

### Florida Class 3

77.     Additionally, Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the

Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by

Defendants' FDCPA violations ("Florida Class 3"), subject to modification after discovery and

case development:

> All persons in Florida to whom Defendants charged, collected, or attempted to
> collect estimated reinstatement of loan amounts during the applicable statute of
> limitations.

78.     Class members are identifiable through Defendants' records and payment databases.

79.     Excluded from the Classes are: (1) Defendants; (2) any entities in which Defendants have a controlling interest; (3) Defendants' agents and employees; (4) any Judge to whom this action is assigned; and (5) any member of such Judge's staff and immediate family.

80.     Plaintiff proposes that he serve as class representative.

81.     Plaintiff and the Classes have all been harmed by the actions of Defendants.

82.     Numerosity is satisfied, as there are likely tens of thousands of class members. Individual joinder of these persons is impracticable.

83.     There are questions of law and fact common to Plaintiff and to the Classes, including, but not limited to:

    a.   Whether Defendants violated the FDCPA by charging monies not due;

    b.   Whether Fay violated the RESPA by providing unclear and inaccurate information;

    c.   Whether Defendants violated the FCCPA by charging monies not due;

    d.   Whether Plaintiff and class members are entitled to actual or statutory damages as a result of Defendants' actions;

    e.   Whether Plaintiff and class members are entitled to attorney's fees and costs; and

    f.   Whether Defendants should be enjoined from engaging in such conduct in the future.

84.     Plaintiff's claims are typical of the claims of the Classes.

85.     Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the interests of the Classes, and he is represented by counsel skilled and experienced in class actions.

86.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

87.     The prosecution of separate claims by individual class members would create a risk of inconsistent or varying adjudications concerning individual class members.

### COUNT I AS TO FAY'S VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT 12 U.S.C. § 2605(k)
### (Florida Class 1)

88.     Fay is a "servicer" because it was responsible for "servicing" Plaintiff's mortgage loan and was scheduled to receive periodic payments from Plaintiff pursuant to the terms of his mortgage loan and make payments of principal and interest from those amounts under the terms of the loan. 12 U.S.C. § 2605(i)(2)–(3).

89.     Plaintiff's loan is a "federally related mortgage loan" because it is secured by a first or subordinate lien, a residential real property designed for the occupancy of one to four families, and was made in whole or in part by Chase Bank USA, N.A. and/or Wilmington, a lender with deposits or accounts which are insured by the FDIC.

90.     As a servicer of a federally related mortgage loan, Fay must comply with any regulation implementing the provisions of RESPA. *See* 12 U.S.C. § 2605(k)(1)(E).

91.     Plaintiff sent a written "request for information" to Fay concerning his mortgage loan and the amount necessary for reinstatement of his loan. 12 CFR § 1024.36.

92.     Fay responded to Plaintiff's written request with information that contained illegal fees not yet incurred and "Pending" fees without identification or explanation as to why and for what services they were charged. *See* 12 CFR § 1024.36(d)(1)(i).

93.     Fay violated § 2605(k)(1)(E) by failing to provide information to Plaintiff in a clear and conspicuous manner, as required by 12 CFR § 1024.32(a)(1), by charging fees not yet incurred ("Pending" foreclosure attorney fees), and by demanding Plaintiff pay these fees to reinstate his loan. 12 CFR § 1024.32(a)(1); 12 U.S.C. § 2605(k)(1)(E).

94.     As a result of Fay's RESPA violation, Plaintiff suffered substantial damage, including but not limited to financial damage incurred because of Fay's illegal conduct.

### COUNT II AS TO FAY'S VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)
### (Florida Class 2)

95.     Plaintiff is a "consumer" as defined by Fla. Stat. § 559.55(8) when he purchased his home by mortgage.

96.     Fay is a "person" as stated in the FCCPA.

97.     Fay attempted to enforce, claim, and assert a known non-existent legal right to a debt as defined by Fla. Stat. § 559.55(6) when it, through Phelan, attempted to collect fees not owed. *Id.* § 559.72(9).

98.     Fay, as a sophisticated mortgage loan servicer regularly engaged in the mortgage loan servicing industry, knew it could only charge fees actually incurred, and not "estimated" fees, because the Eleventh Circuit, in *Prescott v. Seterus, Inc.*, No. 15-10038, 2015 WL 7769235, at *2-6 (11th Cir. Dec. 3, 2015), provided express guidance on the issue prior to the date Fay, through Phelan, sent the reinstatement of loan letter and quote to Plaintiff. The language and

estimated fees in Plaintiff's reinstatement of loan letter and quote was even more egregious than in *Prescott*.

99.     Fay also knew it could only charge fees incurred because, following the *Prescott* decision, the media and trade publications issued voluminous warnings against using "estimated" fees not incurred in reinstatement of loan letters, especially in the Eleventh Circuit.

100.     Fay was also put on notice of its requirements to only charge fees incurred through the many complaints to the CFPB by consumers alleging that Fay charged fees not owed, discussed *supra*.

101.     Fay was also put on notice of its requirements to only charge fees incurred through the servicing guidelines that govern its servicing of mortgage loans, including Plaintiff's.

102.     By charging estimated fees tacked on to the reinstatement amount and failing to provide information in an accurate, clear and conspicuous manner, Fay frustrated Plaintiff's ability to reinstate his loan and caused him to incur further attorney's fees and costs in connection with defending the foreclosure action and responding to the false and unclear information. Plaintiff also suffered the imminent risk of having to pay an illegal amount not owed.

103.     Fay's acts of illegally attempting to collect a debt from Plaintiff and deliberately including the amount not owed into the total amount required for reinstatement constitutes a knowing violation of § 559.72(9) of the FCCPA.

104.     As a result of Fay's violation of the FCCPA, Plaintiff and class members are entitled to actual damages, plus statutory damages under § 559.77(2) of the FCCPA, together with reasonable attorney's fees and costs.

**COUNT III AS TO WILMINGTON'S VIOLATIONS OF THE FLORIDA CONSUMER
COLLECTION PRACTICES ACT § 559.72(9)
(Florida Class 2)**

105.    Plaintiff is a "consumer" as defined by Fla. Stat. § 559.55(8) when he purchased

his home by mortgage.

106.    Wilmington is a "person" as defined under the FCCPA.

107.    Wilmington, as a sophisticated mortgage lender regularly engaged in the

mortgage loan industry, knew it could only charge fees actually incurred, and not "estimated"

fees, because the Eleventh Circuit, in *Prescott v. Seterus, Inc.*, No. 15-10038, 2015 WL 7769235,

at *2-6 (11th Cir. Dec. 3, 2015), provided express guidance on the issue prior to the date Fay,

through Phelan, sent the reinstatement of loan letter and quote to Plaintiff. The language and

estimated fees in Plaintiff's reinstatement of loan letter and quote was even more egregious than

in *Prescott*.

108.    Wilmington also knew it could only charge fees incurred because, following the

*Prescott* decision, the media and trade publications issued voluminous warnings against using

"estimated" fees not incurred in reinstatement of loan letters, especially in the Eleventh Circuit.

109.    Fay's knowledge can also be imputed to Wilmington through principles of

agency. *See, e.g.*, *Compass Bank v. Tania Lynn Vanpelt*, No. CA10-1624 (Fla. Cir. Ct. April 2,

2015) (finding knowledge under the FCCPA could be imputed from agents to the owner of the

mortgage note and holder through principles of agency).

110.    Wilmington was also put on notice of its requirements to only charge fees

incurred through the many complaints to the CFPB by consumers alleging that Wilmington

charged fees not owed, discussed *supra*.

111. Wilmington was also put on notice of its requirements to only charge fees incurred through the servicing guidelines that govern the servicing of mortgage loans it owns, including Plaintiff's.

112. By charging estimated fees tacked on to the reinstatement amount and failing to provide information in an accurate, clear and conspicuous manner, Wilmington frustrated Plaintiff's ability to reinstate his loan and caused him to incur further attorney's fees and costs in connection with defending the foreclosure action and responding to the false and unclear information. Plaintiff also suffered the imminent risk of having to pay an illegal amount not owed.

113. Wilmington's acts of illegally attempting to collect a debt from Plaintiff and deliberately including the amount not owed into the total amount required for reinstatement constitutes a knowing violation of § 559.72(9) of the FCCPA.

114. As a result of Wilmington's violation of the FCCPA, Plaintiff and class members are entitled to actual damages, plus statutory damages under § 559.77(2) of the FCCPA, together with reasonable attorney's fees and costs.

**COUNT IV AS TO FAY'S VIOLATION OF**
**THE FAIR DEBT COLLECTION PRACTICES ACT §§ 1692e, 1692f**
**(Florida Class 3)**

115. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) when he purchased a home in Florida by mortgage.

116. Fay is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because it regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another. Fay's December 30, 2015 letter on behalf of Wilmington to Plaintiff stated that it was an attempt to collect a debt. The mortgage loan exception to the definition of "debt collector" does not apply

because Plaintiff defaulted on his loan on or around April 30, 2015 and the loan was assigned to Wilmington sometime in or around November 2015, and because the servicing rights to Plaintiff's loan was assigned to Fay in or around November 2015.

117.    Fay engaged in "communications" with Plaintiff as defined by 15 U.S.C. § 1692a(2) when Phelan sent the December 30, 2015 debt collection letter to Plaintiff demanding money purportedly due for reinstatement of his loan to avoid foreclosure.

118.    Fay violated 15 U.S.C. § 1692f when it charged estimated fees not owed and not expressly authorized by the agreement creating the debt.

119.    Fay violated 15 U.S.C. § 1692e(2)(A) when it misrepresented the amount, character, and status of the amount to reinstate Plaintiff's mortgage.

120.    Fay's violation of the FDCPA harmed Plaintiff by depriving him of the statutory right to accurate, clear, and conspicuous information concerning his mortgage loan. Additionally, Plaintiff incurred attorney's fees, costs, and other incidental costs in having to follow up on Fay's letter, which contained unclear, inaccurate, and inconspicuous information. Plaintiff also suffered the imminent risk of having to pay an illegal amount.

121.    As a result of Fay's violation of 15 U.S.C. § 1692e and15 U.S.C. § 1692f, Plaintiff and class members are entitled to actual damages, plus statutory damages under 15 U.S.C. § 1692(k), together with reasonable attorney's fees and costs.

**COUNT V AS TO WILMINGTON'S VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT §§ 1692e, 1692f**
**(Florida Class 3)**

122.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) when he purchased a home in Florida by mortgage.

123.     Wilmington is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because it regularly uses instrumentalities of interstate commerce as a mortgage lender, the primary purpose of which is the collection of mortgage debt. Further, Fay's December 30, 2015 letter on behalf of Wilmington to Plaintiff stated that it was an attempt to collect a debt. The mortgage loan exception to the definition of "debt collector" does not apply because Plaintiff defaulted on his loan on or around April 30, 2015 and the loan was assigned to Wilmington sometime in or around November 2015.

124.     Wilmington engaged in "communications" with Plaintiff as defined by 15 U.S.C. § 1692a(2) when its agent, Fay, sent the December 30, 2015 debt collection letter to Plaintiff demanding money purportedly due for reinstatement of his loan to avoid foreclosure.

125.     Wilmington violated 15 U.S.C. § 1692f when it charged estimated fees not owed and not expressly authorized by the agreement creating the debt.

126.     Wilmington violated 15 U.S.C. § 1692e(2)(A) when it misrepresented the amount, character, and status of the amount to reinstate Plaintiff's mortgage.

127.     Wilmington's violation of the FDCPA harmed Plaintiff by depriving him of the statutory right to accurate, clear, and conspicuous information concerning his mortgage loan. Additionally, Plaintiff incurred attorney's fees, costs, and other incidental costs in having to follow up on Fay's letter on behalf of Wilmington, which contained unclear, inaccurate, and inconspicuous information. Plaintiff also suffered the imminent risk of having to pay an illegal amount.

128.     As a result of Wilmington's violation of 15 U.S.C. § 1692e and 15 U.S.C. § 1692f, Plaintiff and class members are entitled to actual damages, plus statutory damages under 15 U.S.C. § 1692(k), together with reasonable attorney's fees and costs.

### JURY DEMAND AND RESERVATION OF PUNITIVE DAMAGES

129.    Plaintiff is entitled to and respectfully demands a trial by jury on all issues so triable.

130.    Plaintiff reserves the right to amend his Complaint and add a claim for punitive damages.

### RELIEF REQUESTED

WHEREFORE. Plaintiff, himself and on behalf of the Classes, respectfully requests this Court to enter judgment against Defendants for all of the following:

a.    That Plaintiff and all class members be awarded actual damages, including but not limited to forgiveness of all amounts not owed;

b.    That Plaintiff and all class members be awarded statutory damages;

c.    That Plaintiff and all class members be awarded costs and attorney's fees;

d.    That the Court enter a judgment permanently enjoining Defendants from charging and/or collecting debt in violation of the FDCPA and FCCPA;

e.    That, should the Court permit Defendants to continue charging and/or collecting debt, it enter a judgment requiring them to adopt measures to ensure FDCPA, RESPA, and FCCPA compliance, and that the Court retain jurisdiction for a period of six months to ensure that Defendants comply with those measures;

f.    That the Court enter a judgment awarding any other injunctive relief necessary to ensure Defendants' compliance with the FDCPA, RESPA, and the FCCPA;

g.    That the Court enter an order that Defendants and their agents, or anyone acting on their behalf, are immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members;

23

   h.     That the Court certify Plaintiff's claims and all other persons similarly situated as

          class action claims under Rule 23 of the Federal Rules of Civil Procedure; and

   i.     Such other and further relief as the Court may deem just and proper.

Dated: December 29, 2016                      Respectfully Submitted,


                                              /s/ *James L. Kauffman*

                                              James L. Kauffman (Fla. Bar. No. 12915)
                                              BAILEY & GLASSER LLP
                                              1054 31st Street, Suite 230
                                              Washington, DC 20007
                                              Telephone:  (202) 463-2101
                                              Facsimile:  (202) 342-2103
                                              Email: jkauffman@baileyglasser.com

                                              J. Dennis Card, Jr., (Fla. Bar No. 0487473)
                                              Darren Newhart (Fla. Bar No. 0115546)
                                              CONSUMER LAW ORGANIZATION, P.A.
                                              2501 Hollywood Boulevard, Suite 100
                                              Hollywood, Florida 33020
                                              Telephone: (954) 921-9994
                                              Facsimile: (305) 574-0132
                                              E-mail: DCard@Consumerlaworg.com

                                              Christopher Legg, Esq. (Fla. Bar. No.
                                              44460)
                                              CHRISTOPHER W. LEGG, P.A.
                                              3837 Hollywood Blvd., Suite B
                                              Hollywood, FL 33021
                                              Telephone: (954) 235-3706
                                              Facsimile: (954) 927-2451
                                              Email: ChrisLeggLaw@gmail.com

                                              *Counsel for Plaintiff and the Putative Class*