## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

Case No. 16-cv-25373-PCH

MICHAEL SHORE, on behalf of
himself and all others similarly situated,

      Plaintiff,

*vs.*

WILMINGTON TRUST, N.A., as trustee for
MFRA TRUST 2015-1 and FAY SERVICING, LLC,

      Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS

Plaintiff, Michael Shore ("Plaintiff"), has embarked on a class action filing odyssey arising

out of a single reinstatement letter provided to him by the law firm Phelan Hallinan Diamond &

Jones, PLLC ("Phelan"). This is the second class action lawsuit Plaintiff and his attorneys have

filed in this Court based on that same reinstatement letter. The first, *Shore v. JPMorgan Chase*

*Bank, N.A. and Phelan Hallinan Diamond & Jones, PLLC*, No. 16-cv-60125 (S.D. Fla. 2016) (the

"Phelan Action"),[1] was predicated on identical facts and theories, and has been settled. The Phelan

Action resulted in a court-approved settlement of all liability arising from the reinstatement letter

---

[1] While in his Phelan Action civil cover sheet Plaintiff checked the box for Broward as the relevant county [Phelan Action DE 1-1], Plaintiff initially did not file a civil cover sheet in this case (resulting in a default assignment to the Miami Division), and later filed a civil cover sheet that leaves the county section blank and states that no related cases have been filed. [DE 4; DE 5-1.] Whether or not deliberate, these actions decreased the likelihood of this case being assigned to Judge Cohn, who presided over the Phelan Action, sits in the Ft. Lauderdale Division, and would have recognized this case as similar to the Phelan Action. Defendants defer to the Court's discretion as to whether a transfer to Judge Cohn is appropriate.

LEÓN COSGROVE, LLC
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

and an order expressly imposing res judicata effect as to any pending or future lawsuit by Plaintiff regarding the reinstatement letter. Having obtained a favorable settlement of the Phelan Action, Plaintiff now seeks to double-dip and sue the new assignee of his loan, Wilmington Trust, N.A., as trustee for MFRA Trust 2015-1 ("Wilmington Trust"), and new loan servicer, Fay Servicing, LLC ("Fay") (collectively "Defendants"). These claims are covered by the plain language of the settlement and order approving the settlement in the Phelan Action. As such, this lawsuit fails in its entirety because Plaintiff's claims are released and claim precluded.

Even if res judicata or the settlement agreement did not bar his claims in their entirety (they do), Plaintiff's pursuit of alleged violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, Florida's Consumer Collection Practices Act (FCCPA), Fla. Stat. § 559.55 *et seq.*, and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.* all fail wholesale due to an uncorrectable lack of legal or factual support. And, even if those claims were not wholly without merit on their face (they are), summary rejection of the Complaint is still appropriate because Plaintiff filed suit without giving Defendants the contractually-required reasonable opportunity to investigate and cure these alleged violations required by his Mortgage.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Complaint [DE 1] should be dismissed with prejudice.

## I.      ALLEGED FACTS

On March 29, 2008, Plaintiff obtained a loan from, and executed a mortgage in favor of, Chase Bank, U.S.A., N.A. ("Chase"). [DE 1 ¶ 36.] "[S]ometime before April 30, 2015," Plaintiff defaulted, or "fell behind," in making his mortgage payments. [DE 1 ¶ 36.] On August 5, 2015, Chase initiated foreclosure proceedings (the "Foreclosure Action"). [DE 1 ¶ 38.] On November 2, 2015, while the Foreclosure Action was pending and Plaintiff was in default, Chase (who both

held and serviced the loan) transferred the servicing of the loan to Fay. [DE 1 ¶ 39; DE 1-4 at 2.] A week later, Chase assigned the mortgage to Wilmington Trust. [DE 1 ¶ 37; DE 1-3 at 3.]

During the Foreclosure Action, Plaintiff's attorney in that case sent a request for the amount to reinstate the loan via email to Phelan, the law firm prosecuting the Foreclosure Action. [DE 1 ¶ 40.] On December 31, 2015, Plaintiff's attorney received a reinstatement quote from Phelan for $18,883.45, of which $215.00 was itemized as "***Pending Foreclosure Attorney Fees." [DE 1 ¶¶ 41–42; DE 1-5.] Plaintiff bases his claims on the inclusion of this "pending" amount, which allegedly was a projected amount contingent on events that had not yet occurred. [DE 1 ¶ 43.]

On December 6, 2016, Plaintiff's attorney sent Defendants a "cure letter" noting the alleged error of asserting an amount not yet due. [DE 1 ¶ 59.] On December 29, 2016, Plaintiff filed a Class Action Complaint against both Defendants as they had not yet responded to the cure letter. [DE 1 ¶ 60.] The Complaint purports to assert claims against both Defendants for alleged violations of the FDCPA and FCCPA, and against Fay for an alleged violation of RESPA.

## II.   JUDCIALLY NOTICEABLE FACTS OMITTED FROM COMPLAINT

Plaintiff omits the following judicially noticeable facts from his Complaint.[2] On January 20, 2016, shortly after his attorneys received the December 31, 2015 reinstatement letter, Plaintiff

---

[2] When deciding a Rule 12(b)(6) motion, a court may judicially notice facts without converting the motion to one for summary judgment. *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular . . . matters of which a court may take judicial notice."). The documents that Defendants request be judicially noticed—the Complaint, the Stipulation and Settlement Agreement, and Order Granting Final Approval to Class Action Settlement and Final Judgment in the Phelan Action—are filings in this Court and public records, so the Court "must" take judicial notice of them. Fed. R. Evid. 201(c)(2) ("[Court] must take judicial notice if a party requests it and the court is supplied with the necessary information."); *Cash Inn of Dade, Inc. v. Metro. Dade Cty.*, 938 F.2d 1239, 1243 (11th Cir. 1991) ("A district court may take judicial notice of public records within its files relating to the particular case before it or other related cases."); *Blue Water Marine Servs. v. All Underwriters Subscribing*

filed a Class Action Complaint against Chase and Phelan. [Phelan Action DE 1.] Plaintiff alleged that Phelan sent Plaintiff several reinstatement letters, including the same December 31, 2015 reinstatement letter on which Plaintiff predicates his claims in this case. [Phelan Action DE 1 ¶ 40; Phelan Action DE 1-8.] This reinstatement letter is an exhibit to the complaints in the Phelan Action and in this case. *Compare* [Phelan Action DE 1-8], *with* [DE 1-5.] As in this case, Plaintiff alleged FDCPA and FCCPA violations based on the reinstatement letter. [Phelan Action DE 1 ¶¶ 63–69, 74–79.] Many allegations in both complaints are identical.

On July 15, 2016, the parties in the Phelan Action filed a Stipulation and Settlement Agreement. [Phelan Action DE 46-2, hereinafter "Phelan Settlement."] The Phelan Settlement states that it is "stipulated and agreed" that "the matters raised by, or which could have been raised by, the [Phelan Action], are settled, compromised, and dismissed on the merits with prejudice." [Phelan Settlement at 1.] The Phelan Settlement is agreed to "be a complete defense to any of the Released Claims against any of the Released Persons." [Phelan Settlement ¶ 10.1.]

The Phelan Settlement contains a broad release by Plaintiff:

> Upon the Final Settlement Date, Named Plaintiff . . . hereby releases and discharges the Released Persons from any and all claims, actions, causes of action, suits, defenses, debts, sums of money, payments, obligations, promises, defenses, damages, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever that Named Plaintiff may have on or before the Final Settlement Date or may have had in the past, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected

_____

*to Cover Note JY416008X*, No. 09-23182, 2010 U.S. Dist. LEXIS 1521, at *6 (S.D. Fla. Jan. 7, 2010) (Huck, J.) ("A district court may take judicial notice of public records, such as court documents, without converting a motion to dismiss into a motion for summary judgment."); *Weitz Co. v. Transp. Ins. Co.*, No. 08-23183, 2009 U.S. Dist. LEXIS 49381, at *9–10 (S.D. Fla. June 11, 2009) (Huck, J.) ("A court may take judicial notice of its own records and the records of inferior courts."); *see also Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 892–93 (11th Cir. 2013) (comparing complaints from two cases to determine whether same facts were involved for purposes of res judicata and affirming district court's Rule 12(b)(6) dismissal). While already available to the Court, these documents are attached as exhibits for the Court's convenience.

4

or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any other source, <u>that were or could have been sought or alleged in the Litigation or that relate, concern, arise from, or pertain in any way to reinstatement quote letters sent by or on behalf of any Released Party</u>.

[Phelan Settlement ¶ 12.2] (emphasis added). The plain language of this release encompasses the claims asserted in this case. To erase any doubt, however, the Phelan Settlement also provides:

> The Release in Paragraph 12.2 shall include, but not be limited to, <u>all claims related to reinstatement quote letters</u> or any communications regarding the reinstatement of any mortgage loan; any alleged breach of any mortgage, promissory note, or other contract as a result of sending any reinstatement quote letter or any communication regarding the reinstatement of any mortgage loan; <u>any alleged violations of the FDCPA, FCCPA, FDUTPA, RESPA</u>, or any other federal or state law <u>relating to reinstatement quote letters sent by or on behalf of any Released Party</u>; and any and all claims for any attorneys' fees, costs, expenses, statutory or punitive damages, or expert fees in connection with or related in any manner to the Litigation[.]

[Phelan Settlement ¶ 12.2.2] (emphasis added). As the claims in this case are based on a reinstatement letter sent by Phelan, a "Released Party," the release's plain language applies to all claims asserted in this case. The Phelan Settlement also states it "will be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties." [Phelan Settlement ¶ 19.9.]

On January 10, 2017, the Court in the Phelan Action entered an Order Granting Final Approval to Class Action Settlement and Final Judgment. [Phelan Action DE 61.] The Order states: "The terms of the Settlement Agreement and of this Final Order and Judgment, including all Exhibits thereto, shall be forever binding on, <u>and shall have *res judicata* and preclusive effect</u>, in <u>all pending</u> and future lawsuits maintained by the Plaintiff . . . ." [Phelan Action DE 61 ¶ 12] (emphasis added). Having been filed on December 29, 2016, this case was pending at the time.[3] [DE 1.] In its Order, the Court incorporated the release quoted *supra*. [Phelan Action DE 61 ¶

---

[3] Plaintiff served Defendants over a month later, after the distribution of attorneys' fees under the Phelan Settlement. [Phelan Action DE 46-2 ¶ 6.5; Phelan Action DE 61 ¶ 11.]

LEÓN COSGROVE, LLC
255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

14(c).] Finally, the Order declared that the Phelan Action, "including all individual claims and class claims presented herein, is hereby **DISMISSED** on the merits and with prejudice against Plaintiff and all other Settlement Class Members." [Phelan Action DE 61 ¶ 21].

### III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Also, a complaint should be dismissed "when the existence of an affirmative defense 'clearly appears on the face of the complaint.'" *Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 609 F. App'x 972, 976 (11th Cir. 2015) (per curiam).

### IV.   ARGUMENT

#### A.   Plaintiff Released All Claims Asserted in this Lawsuit.

Plaintiff has already settled the claims asserted in this case. Plaintiff sued Phelan for alleged FDCPA and FCCPA violations arising out of sending reinstatement letters, including the December 31, 2015 reinstatement letter Phelan sent on behalf of Defendants. Then, the parties in the Phelan Action negotiated a settlement agreement, in which Plaintiff released all claims, including for "any alleged violations of the FDCPA, FCCPA, FDUTPA, RESPA," "that were or could have been sought or alleged in the Litigation or that relate, concern, arise from, or pertain in any way to reinstatement quote letters sent by" Phelan. [Phelan Settlement ¶¶ 12.2, 12.2.2.]

That Defendants were not parties to the Phelan Action or signatories to the Phelan Settlement is irrelevant for two reasons. First, the Phelan Settlement specifies that it "will be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties." [Phelan Settlement ¶ 19.9.] In the Complaint in this case, Plaintiff pleads that Wilmington Trust and Fay are successors or assigns of Chase, one of the Settling Parties to the Phelan Settlement. [DE 1 ¶¶ 37, 39.] Plaintiff also attaches exhibits to his Complaint demonstrating that Wilmington

6

Trust and Fay are Chase's successors or assigns with respect to the mortgage and servicing of the loan—the Assignment of Mortgage and the Notice of Servicing Transfer. [DE 1-3; DE 1-4.] Thus, the Phelan Settlement by its terms "inure[s] to the benefit of," and is enforceable by, Defendants.

Second, even absent the "successors and assigns" clause, the release of the claims against Phelan is a bar to liability as to Wilmington Trust and Fay. In this case, Plaintiff seeks to impose liability on Defendants only vicariously through the actions of Phelan as their agent. *See, e.g.*, [DE 1 ¶ 41] ("On December 31, 2015, Fay responded, <u>through Phelan</u>, in a letter . . . ." (emphasis added); [DE 1 ¶ 51] ("Before Fay sent, <u>through Phelan</u>, the reinstatement of loan letter at issue . . . ." (emphasis added)).[4] Plaintiff has released all claims against Phelan, and there is no basis for vicarious liability based on an agent's actions where the claims against the agent have been released or the agent is otherwise not liable. *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1500 (11th Cir. 1990) ("Under Florida law, 'a principal cannot be held liable if the agent is exonerated." (citations omitted)); *Flake v. Schrader-Bridgeport Int'l, Inc.*, 538 F. App'x 604, 610 (6th Cir. 2013) ("It is quite nearly blackletter law that a plaintiff is not permitted to pursue a claim against a principal based solely on vicarious liability when the plaintiff has settled with the agent and thereby released the agent from liability."); *Lober v. Moore*, 417 F.2d 714, 717 (D.C. Cir. 1969) ("Consequently it is settled that a judgment exonerating a servant or agent from liability bars a subsequent suit on the same cause of action against the master or principal based solely on respondeat superior."); *Holland v. United States*, 86 Fed. Cl. 681, 694 (2009) ("[A] principal is released to the extent of the release given its agent." (alteration in original)); *Molina v. Watkins*,

---

[4] Technically, Plaintiff seeks to impose vicarious liability on Fay based on Phelan's actions and then vicarious liability on Wilmington Trust based on the vicarious liability imposed on Fay. What matters, however, is that both Defendants' alleged vicarious liability is bottomed on the conduct and liability of Phelan, which has been discharged and released.

LEÓN COSGROVE, LLC
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

824 So. 2d 959, 963 (Fla. Dist. Ct. App. 2002) ("The law is settled that where an agent or employee is found to have no liability, then a judgment cannot stand against the principal or employer on the basis of vicarious liability or respondeat superior."); Restatement (Third) of Torts: Apportionment of Liability § 16 cmt d. (2000) ("[T]he master is necessarily released from vicarious liability for the released servant's misconduct." (citation omitted)). "Florida law and general law as to the nonliability of a principal on a vicarious basis for an agent's wrongdoing after the latter has been released . . . require the same result": dismissal with prejudice. *Data Lease*, 904 F.2d at 1501 n.4. Because vicarious liability cannot exist without underlying liability, the claims against Wilmington and Fay require dismissal with prejudice.

**B.       Res Judicata Bars Plaintiff's Claims.**

For similar reasons, res judicata bars Plaintiff's claims. "The doctrine of res judicata, or claim preclusion, bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Data Lease*, 904 F.2d at 1501. "Claim preclusion bars a subsequent lawsuit when four elements are present: '(1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved both cases.'" *Id.*[5]

---

[5] The Florida standard is not materially different. "Res judicata applies when four factors are present: (1) identity in the thing sued for, (2) identity of the causes of action, (3) identity of persons and parties to the actions, and (4) identity of quality or capacity of person against whom the claim is made." *Variety Children's Hosp. v. Mt. Sinai Hosp., Inc.*, 448 So. 2d 546, 547 (Fla. 3d DCA 1984). "In Florida, the test for deciding whether there is identity of causes of action rests upon a comparison of the facts constituting the underlying transaction." *Id.* "Res judicata binds the parties in the former action and their privies." *Wildflower, LLC v. St. Johns River Water Mgmt. Dist.*, 179 So. 3d 369, 374 (Fla. 5th DCA 2015). "[U]nder res judicata a final judgment or decree not only bars a later suit 'between the same parties based upon the same cause of action' but also upon matters that 'could have been raised' . . . ." *Youngblood v. Taylor*, 89 So. 2d 503, 505 (Fla. 1956).

LEÓN COSGROVE, LLC
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

All of these elements are met here. The Order Granting Final Approval to Class Action Settlement and Final Judgment in the Phelan Action is a final judgment on the merits, expressly stating that it is a dismissal on the merits and shall have res judicata effect as to all pending and future lawsuits. [Phelan Action DE 61 ¶¶ 12, 21] This satisfies the first element. *Data Lease*, 904 F.2d at 1501–02. The second element is met as the Court in the Phelan Action had federal question jurisdiction over the FDCPA claim and supplemental jurisdiction over the state-law claims. The third element is met because Phelan sent the reinstatement letter in its capacity as Defendants' agent and, as discussed *supra*, the claims asserted in this case are based solely on Defendants' alleged vicarious liability for Phelan's actions. *Id.* at 1502–03 (holding that privity element is satisfied by principal-agent relationship). And, of course, the plaintiff is the same in both cases.

Finally, the fourth element is met because this case "arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action." *Id.* at 1503. Both actions arose from Phelan's December 31, 2015 reinstatement letter and are based on the same theory that the reinstatement inappropriately included estimated fees. Indeed, the FDCPA and FCCPA claims are the same causes of action even in the narrowest sense. And the RESPA claim is also precluded because it arises from the same operative facts. *Id.* ("In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form."); *Youngblood v. Taylor*, 89 So. 2d at 505 (noting that res judicata applies to all matters that "could have been raised"). Res judicata bars all claims against Defendants.

### C.     Plaintiff Fails to State a RESPA Claim Against Fay.

To state a RESPA "a plaintiff must allege: (1) the defendant is a loan servicer under the statute; (2) the plaintiff sent a qualified written request consistent with the requirements of the statute; (3) the defendant failed to respond adequately within the statutorily required days; and (4) the plaintiff has suffered actual or statutory damages." *Correa v. BAC Home Loans Servicing LP*,

No. 6:11-cv-1197-Orl-22DAB, 2012 U.S. Dist. LEXIS 159089, at *21–22 (M.D. Fla. Apr. 9, 2012). Plaintiff fails to plead facts satisfying the first, second, and third elements.

### 1.   Fay is <u>Not</u> a "Servicer" Under RESPA.

RESPA defines a "servicer" as "the person responsible for servicing of a loan." 12 U.S.C. § 2605(i)(2). "Servicing," in turn, is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan." *Id.* § 2605(i)(3). While Fay may have been a servicer based on the common usage of the term, a review of the allegations in the Complaint leaves no question that Fay does not meet the narrower statutory definition of a "servicer" under RESPA.

Fay is not a "servicer" under RESPA for two <u>independent</u> reasons. First, as Plaintiff alleges, Fay became the servicer during the pending Foreclosure Action when the mortgage was already in default. [DE 1 ¶¶ 37–39; DE 1-4.] Because the loan was already in default and the Foreclosure Action was pending, Fay was necessarily not "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan." *See Daw v. Peoples Bank & Trust Co.*, 5 F. App'x 504, 505 (7th Cir. 2001) ("Once [borrower] defaulted, there were no longer any scheduled periodic payments to make or to collect, and thus there were no servicing rights to assign, sell, or transfer."); *Toscione v. Wells Fargo Home Mortg.*, No. 8:13-CV-02065-T-27AEP, 2013 U.S. Dist. LEXIS 189690, at *1 (M.D. Fla. Sep. 17, 2013) ("[A]t the time the letter was written, Plaintiff's mortgage had been foreclosed and sold at a judicial sale, and Wells Fargo was therefore not 'servicing' the loan within the meaning of 12 U.S.C. § 2605(e)(1)(A)."); *Bilek v. Bank of Am., N.A.*, 2011 U.S. Dist. LEXIS 21350, at *14 (N.D. Ill. Mar. 3, 2011) ("Indeed, it is undisputed that the Bridgeview Loan has been in foreclosure proceedings since September 26, 2007 based on the Bileks' alleged default. Thus, AHMSI was no longer 'servicing' the Bridgeview Loan as defined by Section 2605(i)(3) when Christopher Bilek wrote the letters in August 2009."); *Sanchez v. OneWest Bank, FSB*, 2013 U.S. Dist. LEXIS 3861, at *10–11 (N.D. Ill. Jan. 10, 2013) (dismissing RESPA claim

and relying on case law holding that "because the mortgage was in foreclosure and the plaintiffs had ceased making payments the defendant was no longer servicing the loan").

Second, as the loan would have necessarily been accelerated to initiate the Foreclosure Action referenced in the Complaint, no "scheduled periodic payments . . . pursuant to the terms of [the] loan" existed when Fay first obtained servicing rights or when it sent the reinstatement quote. There were simply no periodic payments to make under the terms of the mortgage, which is precisely why Plaintiff's attorney sought to reinstate the loan. Only reinstatement of the loan by curing the past defaults would cause periodic payments to resume. *See Bartram v. U.S. Bank, N.A.*, 2016 Fla. LEXIS 2424, at \*33 (Fla. 2016) ("Yet, the reinstatement provision of the Mortgage afforded Bartram the opportunity to continue the installment nature of the loan by curing the past defaults." (emphasis added)). As Fay was not, and could not, have been "servicing" the mortgage loan as defined by RESPA, it was not a "servicer" under RESPA and the claim must be dismissed.

### 2.  Plaintiff Failed to Send a Valid Qualified Written Request.

Even if Fay were a "servicer" under RESPA (which it was not), the RESPA claim still fails because Plaintiff failed to send a valid request for information that triggered RESPA's application. Under RESPA's regulations, "[a] servicer may, by written notice provided to a borrower, establish an address that a borrower must use to request information in accordance with the procedures in this section." 12 C.F.R. § 1024.36(b). When a borrower fails to send a request for information to such a designated address, the request is not a valid request under RESPA and cannot supply the basis for a RESPA claim. *Basora v. JPMorgan Chase Bank, N.A.*, No. 16-civ-60999, 2016 U.S. Dist. LEXIS 99635, at \*9 (S.D. Fla. July 29, 2016) ("Thus, as Plaintiff admittedly failed to send his correspondence to the designated address, Chase's response obligations under RESPA were never 'triggered'. As such, Plaintiff has failed to state a claim under RESPA, and Defendant's Motion to Dismiss the Complaint is granted." (internal citation omitted)).

11

Here, pursuant to § 1024.36(b), Fay established, and posted on its website, an address to which requests for information and notices of error must be sent. Ex. D ("**The following mailing address must be used for all Notices of Error and Information Requests submitted via mail:** Fay Servicing, LLC 901 S. 2nd St., Suite 201 Springfield, IL 62704.").[6] Rather than send his request to that address (or to Fay at all), Plaintiff's attorney requested a reinstatement amount via email to a law firm that represented Fay. [DE 1 ¶ 40.] Accordingly, RESPA has never been triggered and Plaintiff fails to state a RESPA claim. *Basora*, 2016 U.S. Dist. LEXIS 99635, at *9.

### 3. The Reinstatement Letter Complied With RESPA.

Even if Fay met the statutory definition of a "servicer" (which it did not) and the request triggered RESPA's obligations (which it did not), the RESPA claim would still fail for the independent reason that the reinstatement letter fully complied with RESPA's obligations. By responding to Plaintiff's request with a reinstatement quote—the exact information requested by the borrower—and providing contact information for further inquiry, Fay satisfied any obligation it had under RESPA. *Sandoval v. Ronald R. Wolfe & Assocs., P.L.*, No. 16-cv-61856, 2017 U.S. Dist. LEXIS 8241, at *12 (S.D. Fla. Jan. 19, 2017). RESPA requires nothing more.

Plaintiff's RESPA claim is identical to the claim rejected and dismissed in *Sandoval*.[7] In *Sandoval*, as here, Plaintiff requested a reinstatement quote and the servicer responded with a reinstatement letter that included a request for attorneys' fees contingent on future events in alleged violation of the FDCPA and FCCPA. 2017 U.S. Dist. LEXIS 8241, at *13. The Court dismissed the RESPA claim with prejudice because, "even if it was improper under the FDCPA and/or the

---

[6] Defendants request that the Court judicially notice Fay's website. If necessary, Defendants do not oppose conversion of their motion to one for summary judgment under Rule 12(d).

[7] This is unsurprising given that the same attorneys advancing the RESPA claim here advanced the identical, failed RESPA claim in *Sandoval*.

LEÓN COSGROVE, LLC
255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

FCCPA to request $250 in attorneys' fees . . . those alleged violations of other federal statutes would not constitute a RESPA violation because the letter is nonetheless fully compliant with the formal and substantive requirements of RESPA and its implementing regulations." *Id.* The same is true here. Regardless of whether the reinstatement letter contained incorrect information in violation of other statutes, Plaintiff has no basis for alleging a RESPA claim.[8] *Sandoval* is simply indistinguishable, and like in *Sandoval*, the RESPA claim must be dismissed.

### D.      Plaintiff Fails to State an FDCPA Claim Against Either Defendant.

"To establish a claim under the FDCPA, the plaintiff must show: '(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Sanz v. Fernandez*, 633 F. Supp. 2d 1356, 1359 (S.D. Fla. 2009). Plaintiff fails to plead facts establishing any of these elements.

#### 1.   Wilmington Trust is <u>Not</u> a "Debt Collector" Under the FDCPA.

Plaintiff's FDCPA claim fails because the Complaint's allegations make clear that Wilmington Trust is not a "debt collector" as defined in the FDCPA. The FDCPA provides a cause of action only against a "<u>debt collector</u> who fails to comply" with its provisions. 15 U.S.C. § 1692k(a) (emphasis added). Congress excluded from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation." *Id.* § 1692a(6)(F).

---

[8] Rather than a right to sue, RESPA provides a procedure for responses to requests for information that are allegedly in error. In such circumstances, a borrower should submit a notice of error to the servicer to provide the servicer an opportunity to cure within the statutory timeframe. *See* 12 C.F.R. § 1024.35. Plaintiff flouted RESPA's procedures by submitting a notice of error and then filing suit before the time to cure allotted under RESPA expired. Defendants in fact cured within the allotted time, but Plaintiff nevertheless proceeded to serve them with the Complaint weeks later.

13

Plaintiff sues Wilmington Trust only in its capacity as a trustee. [DE 1 at 1.] (stating that the Complaint alleges violations against "Defendants Wilmington Trust, N.A., <u>as trustee</u> for MFRA Trust 2015-1" (emphasis added)). The FDCPA is therefore inapplicable because any alleged debt collection activity was incidental to Wilmington Trust's bona fide fiduciary obligations as a trustee. *Jenkins v. Deutsche Bank Nat'l Trust Co.*, No. 07-cv-22463, 2009 U.S. Dist. LEXIS 129921, at *24 (S.D. Fla. Sep. 3, 2009) ("Here, Deutsche Bank, as Trustee, is excluded from the definition of debt collector because all of its actions to enforce Plaintiffs' respective debts were taken solely in its capacity as trustee charged with enforcing the terms of the mortgage.").[9] Because Wilmington Trust is not a "debt collector" within the ambit of the statute, Plaintiff's FDCPA claim fails as a matter of law and should be dismissed.

---

[9] To be sure, numerous cases have applied the exemption in § 1692a(6)(F) as to a mortgage holder sued in its capacity as a trustee. *Junod v. Mortg. Elec. Registration Sys.*, 584 F. App'x 465, 468 (9th Cir. 2014) ("The SAC alleges that 'U.S. Bank, acting as the trustee of the CSMC Trust, is in the business where the principal purpose is to collect debts on behalf of the investors in the CSMC Trust' and 'is responsible for regularly collecting debts owed to the CSMC Trust.' But if U.S. Bank is collecting debts owed to the CSMC Trust, then its actions are 'incidental to a bona fide fiduciary obligation,' and it is exempt from the FDCPA's definition of 'debt collector.'"); *Bernardi v. Deutsche Bank Nat'l Trust Co. Am.*, No. C-11-05453 RMW, 2013 U.S. Dist. LEXIS 6735, at *16 (N.D. Cal. Jan. 15, 2013) ("In addition, Deutsche Trustee appears to have been collecting payments pursuant to its fiduciary duty to the RALI Trust investors, and thus it is not included in the definition of a debt collector."); *Hunt v. U.S. Bank, Nat'l Ass'n*, No. EDCV 12-02171-VAP (OPx), 2013 U.S. Dist. LEXIS 52422, at *22–23 (C.D. Cal. Apr. 3, 2013) ("Plaintiffs have, however, sued U.S. Bank in its capacity as trustee for the Trust. The FDCPA exempts 'any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation.' Plaintiffs have pleaded U.S. Bank's status as a fiduciary, and thus pleaded themselves into the exemption in § 1692a(6)(F)(i)." (internal citations omitted)), *aff'd*, 593 F. App'x 730 (9th Cir. 2015); *Adaimy v. Bank of N.Y. Mellon*, No. CV 11-9871-GHK (AGRx), 2012 U.S. Dist. LEXIS 189882, at *18–19 (C.D. Cal. Apr. 6, 2012); *Montes v. Skyline Fin. Corp.*, No. CV 11-7370-GHK (MANx), 2012 U.S. Dist. LEXIS 190799, at *18–19 (C.D. Cal. Mar. 21, 2012); *U.S. Bank Nat'l Ass'n v. Pryor*, No. 12CVE01-83, 2014 Ohio Misc. LEXIS 3958, at *15 (Ohio Ct. Com. Pl. Oct. 23, 2014).

LEÓN COSGROVE, LLC
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

Furthermore, the FDCPA claim should also be dismissed as against Fay because it acted solely as an agent of Wilmington Trust, who is not a debt collector.[10] [DE 1 ¶ 1] (noting that Fay's actions were "on behalf of Wilmington"); *see also Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012) (noting that a servicer "stand[s] in the shoes of a creditor" for purposes of determining whether an exemption from the FDCPA's "debt collector" definition applies).

### 2. The Reinstatement Letter Was Not "Debt Collection."

To impose liability under the FDCPA, the "animating purpose" of the communication must be to induce payment by a debtor. *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (noting that to constitute debt collection under the FDCPA "an animating purpose of the communication must be to induce payment by the debtor"). A response to a debtor inquiry, as a matter of law, does not have the animating purpose of debt collection. *Arianas v. LVNV Funding LLC*, 132 F. Supp. 3d 1322, 1329–30 (M.D. Fla. 2015) (rejecting FCCPA claim where the "animating purpose of the letters and unanswered telephone calls was to respond to [the consumer's] inquiries, not to harass"). And more generally, a communication that is for informational purposes does not constitute debt collection. *Dyer v. Select Portfolio Servicing, Inc.*, 108 F. Supp. 3d 1278, 1282 (M.D. Fla. 2015) (granting motion to dismiss FDCPA claim where "Defendant's intent in sending the letters [did] not appear to be to collect the debt or induce Plaintiff to settle the debt. Rather, the letters were sent to provide Plaintiff with information"). A "merely ministerial response to a debtor inquiry" cannot create the basis of a FDCPA claim. *Grden*,

---

[10] To the extent the Court disagrees and finds the FDCPA applicable to Fay in this context, the FDCPA would still be inapplicable to Wilmington Trust because it is not a "debt collector" and thus cannot be subject to vicarious liability under the statute. *See Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 953 (11th Cir. 2016) (citing *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996); *Bent v. Smith, Dean & Assocs., Inc.*, No. 3:11-cv-66-J-TEM, 2011 U.S. Dist. LEXIS 75978, 2011 WL 2746847, at *3 (M.D. Fla. July 14, 2011)).

LEÓN COSGROVE, LLC
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

643 F. 3d at 173 ("The statements were merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely.").

Plaintiff's counsel in the Foreclosure Action initiated the communication with Fay's counsel by requesting the reinstatement amount. The animating purpose of the reinstatement letter was, accordingly, a response for informational purposes, and not an attempt to collect a debt. The reinstatement letter was therefore not "debt collection" within the ambit of the FDCPA. For that reason, too, dismissal of Plaintiff's FDCPA claims is warranted. *Ordonez v. Green Tree Servicing LLC*, No. 2:14-cv-01284-RCJ-CWH, 2016 U.S. Dist. LEXIS 88763, at *17 (D. Nev. July 7, 2016) (holding that response to a qualified written request "is not sufficient to show that Defendant was collecting 'debt' when it sent these informational letters" and that "letters not demanding payment but only listing amounts due and prospective due dates are not attempts to collect debt under the meaning of the FDCPA even if accompanied by a warning that failure to pay will result in default"); *Francis v. GMAC Mortg.*, No. 06-CV-15777-DT, 2007 U.S. Dist. LEXIS 41022, at *10 (E.D. Mich. June 6, 2007) (dismissing FDCPA claim because "[a]lthough the letters were sent by a debt collector and, therefore, perhaps *remotely related* to Plaintiff's alleged debt, the letters were, in context, undisputedly sent in response to an inquiry made by Plaintiff. . . . [and] were, on their face, in the nature of a customer service response, rather than a debt collection demand").

### E.      Plaintiff Fails to State an FCCPA Claim Against Either Defendant.

#### 1.   The Reinstatement Letter Was Not Debt Collection.

The FCCPA requires "[i]n applying and construing this section, due consideration and great weight shall be given to the interpretations of . . . the federal courts relating to the federal Fair Debt Collection Practices Act." Fla. Stat. §559.77(5). Like the FDCPA claims, the FCCPA claims fail because the animating purpose of the reinstatement letter was not induce payment of a debt, but to respond to a request for information. *Arianas*, 132 F. Supp. 3d at 1329–30.

16

### 2. Florida's Litigation Privilege Bars the FCCPA Claims.

Florida's litigation privilege affords absolute immunity to "any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding." *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007) (alteration in original) (quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994)); *see also Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004). It "applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin." *Echevarria*, 950 So. 2d at 384. The litigation privilege is an appropriate basis for dismissal when its applicability is facially apparent from the complaint. *Jackson*, 372 F.3d at 1277.

Here, the reinstatement letter was sent during the course of a judicial proceeding, the Foreclosure Action. The letter had "some relation" to the proceeding as it was sent as part of correspondence between the law firms involved in the Foreclosure Action and it was requested so the borrower's attorney could determine the amount required to reinstate the loan and avoid foreclosure. *Cf. Bartram*, 2016 Fla. LEXIS, at *30–31 (discussing a borrower's right to reinstatement under a mortgage to avoid foreclosure). Indeed, the portion of the reinstatement letter that Plaintiff complains of is the itemized amount for "Foreclosure Attorney Fees." [DE 1 ¶¶ 41–42; DE 1-5.] Accordingly, it is apparent from the face of the Complaint that the litigation privilege renders Defendants immune from any liability arising out of the sending of the reinstatement letter.

Even if the <u>absolute</u> litigation privilege does not apply (it does), Florida's <u>qualified</u> litigation privilege applies. Where conduct is "connected with or related to the subject of inquiry in the underlying lawsuit," a qualified litigation privilege applies and Florida law places "the burden on the plaintiff to then prove the additional element of express malice." *Delmonico v. Traynor*, 116 So. 3d 1205, 1219 (Fla. 2013). As the reinstatement letter was sent during the

LEÓN COSGROVE, LLC
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

pendency of the Foreclosure Action between counsel in the Foreclosure Action and requested an amount to reinstate the loan and terminate foreclosure proceedings, it was at least "connected with or related to" the foreclosure. So, to the extent the absolute litigation privilege is inapplicable, Plaintiff still has the burden of pleading and proving express malice. *Id.* Plaintiff fails to allege malice at all, let alone express malice, so at least the qualified litigation privilege bars the claim.

### 3.   Plaintiff Fails to Plead a Knowing Violation.

To the extent the FCCPA claim is not otherwise subject to dismissal, it still must be dismissed because Plaintiff fails to allege a knowing violation of the FCCPA. Unlike the FDCPA, the FCCPA contains a heightened knowledge requirement. *Prescott v. Seterus, Inc.*, 635 F. App'x 640, 646 (11th Cir. 2015) ("Although the Florida statute is modeled after the FDCPA, *see* Fla. Stat. § 559.77(5), the two statutes are not identical. For example, the FCCPA 'requires a plaintiff to demonstrate that the debt collector defendant possessed actual knowledge that the threatened means of enforcing the debt was unavailable.'"); *Prescott v. Seterus, Inc.*, No. 13-cv-62338, 2016 U.S. Dist. LEXIS 107693, at *13 (S.D. Fla. July 7, 2016) (noting that FCCPA "imposes the additional evidentiary bar to relief, proof of actual knowledge"); *Locke v. Wells Fargo Home Mortg.*, No. 10-60286-Civ, 2010 U.S. Dist. LEXIS 126140, at *7 (S.D. Fla. Nov. 30, 2010) ("The FCCPA requires an allegation of knowledge or intent by the debt collector in order to state a cause of action."). In short, "the FCCPA does not hold a debt collector liable for constructive knowledge." *Prescott*, 2016 U.S. Dist. LEXIS 107693, at *14.

Here, Plaintiff has not—and cannot—allege the requisite knowledge or intent to impose FCCPA liability on Defendants because their liability is premised solely on Phelan's actions on their behalf. If Defendants did not directly engage in the alleged conduct, they cannot have had the knowledge or intent that is a prerequisite to liability under the FCCPA.

LEÓN COSGROVE, LLC
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

**F.     All the Claims Fail for Violation of the Mortgage's Notice-and-Cure Requirements.**

Plaintiff failed to comply with the notice-and-cure provisions in his mortgage. Paragraph 20 of the mortgage, which is an exhibit to the Complaint, provides:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party . . .  of such alleged breach <u>and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If the Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.</u>

[DE 1-1 ¶ 20] (emphasis added).

Based on its plain language, the notice-and-cure provision is applicable to every claim that Plaintiff asserts.[11] Courts have held identical notice-and-cure provisions applicable to the same type of RESPA, FDCPA, and FCCPA claims alleged in this case. *See, e.g.*, *Sandoval*, 2017 U.S. Dist. LEXIS 8241, at *7–9; *Charles*, , 2016 U.S. Dist. LEXIS 32523, at *6–8; *Sotomayor v. Deutsche Bank Nat'l Trust Co.*, No. 0:15-cv-61972, 2016 U.S. Dist. LEXIS 77945, at *6–7 (S.D. Fla. Feb. 5, 2016). And Plaintiff alleges multiple breaches of the mortgage and note. [DE 1 ¶ 54.]

As alleged in the Complaint, Plaintiff sent a cure letter to Defendants on December 6, 2016, and Defendants did not respond by December 29, 2016, when Plaintiff filed his Complaint. [DE 1 ¶¶ 59–60.] As a matter of law, the time provided by Plaintiff for Defendants to cure the alleged

---

[11] The notice-and-cure provision is equally applicable to lenders and servicers of a mortgage loan. *Erving v. Ocwen Loan Servicing, LLC*, No. 16-cv-62800, 2017 U.S. Dist. LEXIS 12435, at *6 (S.D. Fla. Jan. 27, 2017); *Charles v. Deutsche Bank Nat'l Trust Co.*, No. 1:15-cv-21826, 2016 U.S. Dist. LEXIS 32523, at *11 (S.D. Fla. Mar. 14, 2016).

LEÓN COSGROVE, LLC
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

error—fewer than 16 business days—was not a "reasonable period."[12] By comparison, the mortgage requires that the borrower be given at least 30 days to cure a default before foreclosure proceedings may be initiated. [DE 1-1 ¶ 22.]

Also, as noted in the notice-and-cure provision, "Applicable Law" governs the length of a "reasonable period." [DE 1-1 ¶ 20] ("If the Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph."). The Mortgage defines "Applicable Law" to include RESPA and its implementing regulations. [DE 1-1 at Definition (H)] (defining "Applicable Law" to include all applicable federal statutes and regulations). To the extent the Court disagrees with the analysis in Part C regarding the bases for dismissal of the RESPA claim, RESPA is the applicable law and governs the "reasonable period" provided under the notice-and-cure provision. And even if RESPA is inapplicable, it provides a useful guidepost for determining a "reasonable period."

Plaintiff himself characterizes his request for a reinstatement amount to be a request for information under RESPA and its regulations. [DE 1 ¶¶ 61–63, 91.] What Plaintiff omits is that RESPA also provides an error resolution procedure and that, if his request for reinstatement was governed by RESPA, his notice-and-cure letter was a notice of error under RESPA. *See* 12 C.F.R. § 1024.35(a) ("A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section . . . ."). The deadline to cure such an error under RESPA's error resolution regulations is 30 days (excluding legal holidays, Saturdays, and Sundays) after the servicer receives the notice of error. *Id.* § 1024.35(e)(3)(i)(C). Thus, even assuming that Fay received Plaintiff's notice on the same day it was sent (which it did not), the

---

[12] The time provided to cure was fewer than 16 business days because December 6, 2016 is only the date the notice was allegedly sent. Regardless, even 16 days is unreasonable as a matter of law.

deadline to respond would be January 20, 2017 and Plaintiff's arbitrary December 29, 2016 deadline is *per se* unreasonable. If RESPA applies, Plaintiff cannot circumvent RESPA's procedures to cut short Defendants' time to respond. Accordingly, to the extent RESPA applies, all of Plaintiff's claims should be dismissed for failure to comply with the notice-and-cure provisions in the mortgage by failing to allow Defendants a reasonable amount of time to cure.

## V.    CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

LEÓN COSGROVE, LLC
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

Dated: February 23, 2017

Respectfully submitted,

<u>s/ Brendan I. Herbert</u>
Brendan I. Herbert
 Florida Bar No. 76925
Jeremy L. Kahn
 Florida Bar No. 105277
 **LEÓN COSGROVE, LLC**
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Telephone:     305.740.1975
Facsimile:     305.437.8158
Email:     bherbert@leoncosgrove.com
Email:     jkahn@leoncosgrove.com
Email:     kvasquez@leoncosgrove.com
Email:     eperez@leoncosgrove.com

*Counsel for Fay Servicing, LLC and*
*Wilmington Trust, N.A., as trustee for MFRA*
*Trust 2015-1*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 23, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which in turn will serve a copy by electronic mail to all counsel of record.

James L. Kauffman, Esq.
BAILEY &GLASSER LLP
1054 31st Street, Suite 230
Washington, DC 20007
awasch@jkauffman@baileyglasser.com

J. Dennis Card, Jr., Esq.
Darren Newhart, Esq.
CONSUMER LAW ORGANIZATION, P.A.
2501 Hollywood Boulevard, Suite 100
Hollywood, Florida 33020
DCard@Consumerlaworg.com

Christopher Legg, Esq.
CHRISTOPHER W. LEGG, P.A.
3837 Hollywood Blvd., Suite B
Hollywood, FL 33021
ChrisLeggLaw@gmail.com

*Counsel for Plaintiff and the Putative Class*

                              *s/ Brendan I. Herbert*
                                Brendan I. Herbert

LEÓN COSGROVE, LLC
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM